IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

JASON ALLEN MAGGARD,

    Petitioner,                      No. CIV S-04-2196 GEB KJM P

    vs.

JEANNE S. WOODFORD, et al.,

    Respondents.                  FINDINGS AND RECOMMENDATIONS

_____/

        Petitioner is a state prison inmate proceeding pro se with a petition for a writ of habeas corpus under 28 U.S.C. § 2254, challenging his Placer County convictions for evading an officer while driving in disregard for safety and assault with a deadly weapon. He raises two grounds: the trial court erred in allowing a police officer to describe some of petitioner's actions as volitional, and the trial court erred in failing to give a specific unanimity instruction.

I. Factual and Procedural Background

        The state Court of Appeal's recitation of the facts of the offense fairly reflects the record:

> On July 22, 2000, Sacramento Police Officer Richard Baughman was traveling on Auburn-Folsom Road, near its intersection with Horseshoe Bar Road. He was on a marked police motorcycle and in full uniform.

1

> Baughman noticed a line of stopped vehicles northbound on Auburn-Folsom Road, which were waiting for three children, ranging in ages six through nine, to cross the street. In his peripheral vision, Baughman saw another vehicle, which was moving very fast, approaching the stopped vehicles.
>
> Officer Baughman saw that the vehicle was a white Chevrolet pickup truck, traveling at perhaps 75 miles per hour (mph). As it approached the stopped traffic, the truck crossed over the double yellow line into the oncoming (southbound) lane. Baughman yelled as loudly as he could for the children to stop. The children responded by stopping in the middle of the street. The officer then made eye contact with defendant, who was driving the white pickup. Defendant's truck accelerated as it raced passed [sic] the children, missing them by about five feet.
>
> Baughman activated his siren and high-beam headlights and began a high speed pursuit of defendant northbound on Auburn-Folsom Road, reaching speeds close to 100 mph. Near the intersection of Whiskey Bar Road, defendant's truck abruptly shifted its weight and swerved to the left across the center line, narrowly missing a southbound vehicle and forcing it off the road to the bottom of an embankment. Near the intersection of King Road, defendant again crossed the center line, narrowly missing a southbound vehicle and also forcing it off the road. Except when he drove passed [sic] the children and veered toward each of the two oncoming vehicles, defendant stayed in his lane of traffic and did not cross the center line.
>
> As defendant approached a sweeping curve near Kingmont Road, the truck's wheels locked and it skidded off the road, coming to rest against a wooden rail fence. The occupants promptly began throwing beer bottles out of the truck. With the assistance of two backup officers, Baughman took defendant and his two passengers into custody.
>
> At the time of his arrest, defendant had two outstanding felony bench warrants for failure to complete his work project.

Lodged Document D, Appendix A (Lodg. Doc., App.) at 1-3.

In the state Court of Appeal, petitioner raised six challenges to his conviction. Lodg. Doc. A. His Petition for Review filed in the California Supreme Court contained only two issues. Lodg. Doc. D.

Petitioner's original petition in this court was dismissed because petitioner named the wrong respondent. See Docket No. 4. His amended petition contained the six claims

1  presented to the state Court of Appeal; the court recommended that the petition be dismissed
2  because it contained both exhausted and unexhausted claims.  Docket No. 18.  The district court
3  declined to adopt the recommendations and returned the case to this court for consideration in
4  light of Rhines v. Weber, 544 U.S. 269 (2005).  Docket No. 21.  Ultimately, however, this court
5  recommended that petitioner's motion for a stay of the proceedings to permit exhaustion of the
6  remaining claims be denied, a recommendation upheld by the district court.  Docket Nos. 25, 29.
7  The case has proceeded on the two exhausted claims.

## II. Standards Under The AEDPA

An application for a writ of habeas corpus by a person in custody under a judgment of a state court can be granted only for violations of the Constitution or laws of the United States.  28 U.S.C. § 2254(a).  Federal habeas corpus relief also is not available for any claim decided on the merits in state court proceedings unless the state court's adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (referenced herein in as "§ 2254(d)" or "AEDPA").  See Ramirez v. Castro, 365 F.3d 755, 773-75 (9th Cir. 2004) (Ninth Circuit affirmed lower court's grant of habeas relief under 28 U.S.C. § 2254 after determining that petitioner was in custody in violation of his Eighth Amendment rights and that § 2254(d) does not preclude relief); see also Lockyer v. Andrade, 538 U.S. 63, 70-71 (2003) (Supreme Court found relief precluded under § 2254(d) and therefore did not address the merits of petitioner's Eighth Amendment claim).[1]  Courts are not required to

---

[1] In Bell v. Jarvis, 236 F.3d 149, 162 (4th Cir. 2000), the Fourth Circuit Court of Appeals held in a § 2254 action that "any independent opinions we offer on the merits of constitutional claims will have no determinative effect in the case before us . . . At best, it is constitutional dicta."  However, to the extent Bell stands for the proposition that a § 2254 petitioner may obtain

3

address the merits of a particular claim, but may simply deny a habeas application on the ground that relief is precluded by 28 U.S.C. § 2254(d). <u>Lockyer</u>, 538 U.S. at 71 (overruling <u>Van Tran v. Lindsey</u>, 212 F.3d 1143, 1154-55 (9th Cir. 2000) in which the Ninth Circuit required district courts to review state court decisions for error before determining whether relief is precluded by § 2254(d)). It is the habeas petitioner's burden to show he is not precluded from obtaining relief by § 2254(d). See <u>Woodford v. Visciotti</u>, 537 U.S. 19, 25 (2002).

The "contrary to" and "unreasonable application" clauses of § 2254(d)(1) are different. As the Supreme Court has explained:

> A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in our cases, or if it decides a case differently than we have done on a set of materially indistinguishable facts. The court may grant relief under the "unreasonable application" clause if the state court correctly identifies the governing legal principle from our decisions but unreasonably applies it to the facts of the particular case. The focus of the latter inquiry is on whether the state court's application of clearly established federal law is objectively unreasonable, and we stressed in <u>Williams</u> [v. Taylor, 529 U.S. 362 (2000)] that an unreasonable application is different from an incorrect one.

<u>Bell v. Cone</u>, 535 U.S. 685, 694 (2002). A state court does not apply a rule different from the law set forth in Supreme Court cases, or unreasonably apply such law, if the state court simply fails to cite or fails to indicate an awareness of federal law. <u>Early v. Packer</u>, 537 U.S. 3, 8 (2002).

The court will look to the last reasoned state court decision in determining whether the law applied to a particular claim by the state courts was contrary to the law set forth in the cases of the United States Supreme Court or whether an unreasonable application of such law has occurred. <u>Avila v. Galaza</u>, 297 F.3d 911, 918 (9th Cir. 2002). Where the state court fails

---

relief simply by showing that § 2254(d) does not preclude his claim, this court disagrees. Title 28 U.S.C. § 2254(a) still requires that a habeas petitioner show that he is in custody in violation of the Constitution before he or she may obtain habeas relief. See <u>Lockyer</u>, 538 U.S. at 70-71; <u>Ramirez</u>, 365 F.3d at 773-75.

4

to give any reasoning whatsoever in support of the denial of a claim arising under Constitutional or federal law, the Ninth Circuit has held that this court must perform an independent review of the record to ascertain whether the state court decision was objectively unreasonable. Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003). In other words, the court assumes the state court applied the correct law, and analyzes whether the decision of the state court was based on an objectively unreasonable application of that law.

It is appropriate to look to lower federal court decisions to determine what law has been "clearly established" by the Supreme Court and the reasonableness of a particular application of that law. See Duhaime v. Ducharme, 200 F.3d 597, 598 (9th Cir. 1999).

III. Baughman's Testimony

On August 29, 2001, the defense filed a motion in limine, seeking to exclude Baughman's testimony that petitioner intentionally steered the truck toward two cars, intended that the two cars collide with fixed objects, and intended to cause an accident so that Baughman would stop to assist any one injured. CT 111-112.

The trial court held a hearing on the motions in limine and heard Baughman's testimony. RT 54-65. It ruled that Baughman had "sufficient expertise into the characteristics of vehicles at high speed maneuvering and as to the behavior of those being pursued in high speed chases he would qualify as an expert on those." The court also found that this information was outside the experience of the average juror, so that expert testimony would aid the trier of fact. RT 65-66.

Thereafter, Baughman testified that although petitioner swerved several times during the pursuit, he did not lose control of the truck and that the movements were intentional. RT 131, 139, 183. He also testified that some of petitioner's maneuvers appeared to be an attempt to run oncoming cars off the road. RT 129.

/////

/////

The Court of Appeal rejected this claim of error:

> The [trial] court did not abuse its discretion in qualifying Baughman as an expert on whether defendant's turning movement into oncoming vehicles was intentional. Baughman had extensive experience as a traffic officer; he had special training on accident reconstruction and had personally been involved in over 100 high-speed chases. His opinion that defendant's swerving movement was volitional was based on technical observations not within the capability of the ordinary layperson, such as the condition of the tires and the roadway, the slack in the steering, and the change in the loading and suspension of [the] swerving vehicle.
>
> Contrary to defendant's suggestion, Baughman was not testifying as to defendant's state of mind. The officer was simply applying his experience and observations to give an opinion as to whether the turning movement of defendant's truck was caused by the volitional action of the driver rather than by external factors such as skidding or loss of control. Baughman was not asked for, nor did he give, an opinion on the speculative subject of defendant's thought processes during the high-speed chase.
>
> Defendant also claims it was improper for the officer to opine that, with respect to the first vehicle, defendant's movement was an "attempt to run [it] off the road," an opinion partially based on his experience that fleeing suspects sometimes use such diversionary tactics to avoid capture. He asserts that Baughman was unqualified to give such an opinion, because it was derived solely from conversations with unidentified suspects, not on any scientifically reliable data.
>
> It appears that Baughman's testimony that defendant attempted to run one of the vehicles off the road strayed beyond the permissible scope of the court's ruling on the motion in limine. The court made clear that Baughman was qualified to express an opinion on whether "the maneuver by [defendant] was caused by some external force or was volitional on his part," and could testify concerning the "behavior of those being pursued in high speed chases." Nevertheless, all parties agreed that Baughman would not be asked whether defendant "intended to turn into oncoming vehicles." To the extent that Baughman exceeded the scope of the court's in limine ruling, however, defendant waived any claim of error by failing to object and move to strike the remark.
>
> In any event, Baughman's opinion that defendant was attempting to run one of the vehicles off the road did not constitute prejudicial error. The evidence was clear that defendant was driving erratically and at exceptionally high speeds while attempting to flee from a uniformed motorcycle officer. The only time he crossed the center line was to swerve at oncoming vehicles. Even without Baughman's opinion, the jury could easily conclude that defendant

> intentionally steered his truck toward oncoming traffic in an attempt to create a diversion that would facilitate his escape. It was miraculous that no one was killed or seriously injured as a result of defendant's reckless driving. We conclude the jury would have returned the same verdict with or without Baughman's remark.

Lodg. Doc. at 6-8.

Generally, a state court's evidentiary ruling is not subject to federal habeas review unless the ruling violates federal law, either by infringing upon a specific federal constitutional or statutory provision or by depriving the defendant of the fundamentally fair trial guaranteed by due process. See Pulley v. Harris, 465 U.S. 37, 41 (1984); Jammal v. Van de Kamp, 926 F.2d 918, 919-20 (9th Cir. 1991). Petitioner does not argue that the admission of this testimony violated a specific constitutional provision, but rather that it rendered his trial fundamentally unfair.

This court cannot say that the state court acted unreasonably in rejecting this claim of error: neither Baughman's opinion that petitioner was in control of the vehicle when it swerved at the other cars or his testimony that petitioner was attempting to cause an accident in order to short-circuit the pursuit rendered petitioner's trial fundamentally unfair. Baughman's purely factual description of petitioner's driving provided the following information for the jury: a number of cars were stopped at an intersection in both the direct lane of travel and the left turn lane, to allow some children to cross the street, RT 94, 96; petitioner approached the intersection at a speed of 75 miles per hour, although the posted speed for that portion of Auburn-Folsom Road was 45 miles per hour, RT 95, 111; instead of stopping behind the other cars, petitioner crossed the double yellow line into the opposite lane to bypass the stopped cars and pass through the intersection, RT 97; petitioner accelerated through the intersection, coming to within five feet from the children, RT 98, 100; Baughman, in uniform, made eye contact with petitioner, who looked startled, RT 99; Baughman activated the lights and siren on his motorcycle, but petitioner did not stop, RT 99, 112; Baughman began a pursuit, sounding his air horn on occasion and

though petitioner did slow down to about 65 miles per hour to take a curve, he did not stop, RT 115-117; when the road became straighter, petitioner exceeded 70 miles per hour again, RT 122; petitioner crossed the double yellow line into oncoming traffic, missing an oncoming vehicle by about five feet and causing it to veer off the road, RT 122-124; petitioner again slowed to about 65 miles per hour on curves, accelerating to 90 miles per hour on the straightaway and had no problem staying in his lane, RT 126; petitioner crossed the double yellow line a second time, again causing an oncoming car to veer off the road, RT 127-128, 136; there were no obstructions or hazards in petitioner's direction of travel when he crossed the double yellow line on these two occasions, RT 128, 141; eventually, petitioner's wheels locked as he braked for a curve and he skidded off the road and into a fence, RT 145. Baughman's two opinions–that petitioner did not lose control of the truck when he crossed the double yellow line and that these movements were attempts to force the oncoming vehicles off the road–did not render the trial fundamentally unfair in light of the overwhelming evidence of petitioner's reckless driving and traffic violations.[2]

In addition, the jury was instructed that it was "not bound by an [expert's] opinion. Give each opinion the weight you think it deserves. You may disregard any opinion if you find it to be unreasonable." RT 291; CT 165. Compare Engesser v. Dooley, 457 F.3d 731 (8th Cir. 2006) (even though officer opined that petitioner was lying when he gave his statement, error was harmless because jury was instructed it was sole judge of credibility). The Court of Appeal did not apply constitutional law in an unreasonable fashion in rejecting this claim.

/////

---

[2] The Court of Appeal found that petitioner did not preserve his objection to Baughman's opinion that petitioner was attempting to force the other cars off the road. Lodg. Doc. D, App. A at 7. Respondent argues that this claim is thus procedurally defaulted. This court chooses not to address the question of default, but rather resolves the claim on its merits. See Lambrix v. Singletary, 520 U.S. 518, 525 (1997) (a district court may reach the merits of a habeas petitioner's claim where, as here, the merits are "easily resolvable against the petitioner whereas the procedural-bar issue involve[s] complicated issues of state law.").

8

IV. <u>Unanimity Instruction</u>

Petitioner was convicted of violating California Vehicle Code section 2800.2, which makes a driver's willful and wanton disregard for the safety of persons or property while fleeing a police officer a felony. Subdivision (b) of this code section provides:

> For purposes of this section, a willful or wanton disregard for the safety of persons or property includes, but is not limited to, driving while fleeing or attempting to elude a pursuing peace officer during which time either three or more violations that are assigned a traffic violation point count under Section 12810[3] occur, or damage to property occurs.

Cal. Veh. Code § 2800.2(b).

The trial court instructed the jury that:

> The defendant is accused of having committed the crime of evading an officer with the willful disregard in Count 1.
>
> The prosecution has introduced evidence for the purpose of showing that there is more than one act upon which a conviction on Count 1 may be based.
>
> The defendant may be found guilty, if the proof shows beyond a reasonable doubt that he committed any one or more of the acts.
>
> However, in order to return a verdict of guilty to Count 1, all jurors must agree that he committed the same act. It is not necessary that the particular act agreed upon be stated in your verdict.

RT 332-333; CT 178. The jury was also instructed on the potential Vehicle Code violations upon which the jury could base its verdict: violations of California Vehicle Code section 22350, the basic speed law, and section 21460, which defines the circumstances in which a driver may cross over a double yellow line in the middle of the road. RT 293-295; CT 171-172.

---

[3] This Vehicle Code section lists a number of traffic violations and their point values and includes a catch-all provision: "(f) . . . any other traffic conviction involving the safe operation of a motor vehicle upon the highway shall be given a value of one point."

.

On appeal, petitioner argued that the trial court was required to give a more specific unanimity instruction because the statue can be violated by driving with willful or wanton disregard, committing multiple traffic violations during the pursuit, or causing property damage.[4] The Court of Appeal rejected this claim:

> [D]efendant maintains that to the extent the rule [rejecting the need for a specific unanimity instruction when there are alternative ways in which an offense may be committed] prevails in California, it is inconsistent with . . . *Schad v. Arizona* (1991), 501 U.S. 624, 630-633 [115 L.Ed.2d. 555, 564-566], wherein the court held that due process precludes a state from punishing a criminal defendant under a statute so broadly defined that it is fundamentally unfair. However, the California Supreme Court has already thwarted such a claim. In *People v. Santamaria* (1994) 8 Cal.4th 903, 918-919, the court stated that California's version of the unanimity rule, requiring juror unanimity only on the issue of whether the defendant is guilty of the charged crime irrespective of whether there is agreement on which of several theories of guilt apply, "passes federal constitutional muster."

Lodg. Doc. D, App. A at 13-14.

In Schad v. Arizona, 501 U.S. 624, 629 (1991), a defendant was charged with first degree murder on two theories: that the murder was committed during the course of a robbery or that it was premeditated and deliberate. He contended that the jury should have been instructed

/////
/////
/////
/////
/////
/////
/////
/////

---

[4] In this case, however, the court did not instruct the jury that property damage could be the basis of the felony evading charge. RT 294; CT 171.

10

that it must unanimously agree on the theory of first degree murder supporting his conviction. The Supreme Court rejected the claim:

> Petitioner's jury was unanimous in deciding that the State had proved what, under state law, it had to prove: that petitioner murdered either with premeditation or in the course of committing a robbery. The question still remains whether it was constitutionally acceptable to permit the jurors to reach one verdict based on any combination of the alternative findings. If it was, then the jury was unanimous in reaching the verdict, and petitioner's proposed unanimity rule would not help him. If it was not, and the jurors may not combine findings of premeditated and felony murder, then petitioner's conviction would fall even without his proposed rule, because the instructions allowed for the forbidden combination.
>
> In other words, petitioner's real challenge is to Arizona's characterization of first-degree murder as a single crime as to which a verdict need not be limited to any one statutory alternative, as against which he argues that premeditated murder and felony murder are separate crimes as to which the jury must return separate verdicts.

Id. at 630-31. The Court concluded that, under Arizona law, premeditation and the commission of a felony in conjunction with the murder were means of satisfying the mens rea requirement and ultimately found that permitting jurors to rely on both in reaching a unitary verdict did not violate due process. Id. at 639. It cautioned, however,

> [i]f . . . two mental states are supposed to be equivalent means to satisfy the *mens rea* element of a single offense, they must reasonably reflect notions of equivalent blameworthiness or culpability, whereas a difference in their perceived degrees of culpability would be a reason to conclude that they identified different offenses altogether. Petitioner has made out no case for such moral disparity in this instance.

Id. at 643. The Court also found there was substantial historical and statutory precedent for equating the mental states of premeditated murder and felony murder. Id. at 640.

In this case, petitioner suggests there is no equivalent blameworthiness between what he identifies as the mens rea requirements of wantonness and strict liability, based on wanton driving itself or the commission of qualifying traffic offenses. Am. Pet. (Docket No. 20-

1 2) at 16.⁵  He has provided little analysis of the question, however, either by examining the
2 statutes themselves or other precedent to suggest the problems with the manner in which the
3 California legislature defined the offense.  As the <u>Schad</u> court observed, in such a case, "the state
4 legislature's definition of the elements of the offense is usually dispositive."  <u>Id</u>. at 639 (internal
5 citation, quotation omitted).  In light of the general primacy of a state legislature's definitions,
6 petitioner cannot show that the state court applied federal law unreasonably in rejecting this
7 claim of error.

8        IT IS THEREFORE RECOMMENDED that the petition for a writ of habeas
9 corpus be denied.

10        These findings and recommendations are submitted to the United States District
11 Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty
12 days after being served with these findings and recommendations, any party may file written
13 objections with the court and serve a copy on all parties.  Such a document should be captioned
14 "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections
15 shall be served and filed within ten days after service of the objections.  The parties are advised
16 that failure to file objections within the specified time may waive the right to appeal the District
17 Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).
18 DATED:  March 17, 2008.

_____
U.S. MAGISTRATE JUDGE

2

magg2196.157

---

⁵ Page references are to those assigned to the document by the court's CM/ECF system.